## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIREMEN'S INSURANCE COMPANY | : | CIVIL ACTION |
| OF WASHINGTON, D.C. | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | NO. 14-6065 |
| | : | |
| B.R. KREIDER & SON, INC., | : | |
| PERRROTTO BUILDERS, LTD., | : | |
| TIMOTH HAAHS & ASSOCIATES, and | : | |
| RED ROSE TRANSIT AUTHORITY | : | |
| | : | |
| **Defendants.** | : | |

**STENGEL, J.**                                                              **March 24, 2016**

### MEMORANDUM

Plaintiff, Firemen's Insurance Company of Washington, D.C. ("Firemen's") brought this suit seeking a declaratory judgment that it does not owe any defense or indemnity to certain parties who are involved in underlying state court actions pending in Lancaster County ("the Underlying Litigation") involving its own insured B.R. Kreider & Sons, Inc. ("Kreider"). The case arises from incidents occurring during Phase II of the construction of the Queen Street Station garage ("the Project"). The Underlying Litigation consists of fourteen lawsuits, several of which allege liability against Kreider; it also includes a declaratory judgment action filed by Kreider to resolve coverage issues against Firemen's. Kreider seeks to dismiss the federal court declaratory judgment action because of the parallel state court declaratory judgment action. Defendant Timothy Haahs & Associates ("Haahs") has filed a similar motion. I conclude that the two Motions to Dismiss should be granted.

## I.      BACKGROUND

Firemen's initiated its declaratory judgment action on October 23, 2014 pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 to determine its rights and obligations under Policy No. CPA

0111887 40 issued to Kreider (the "Policy").  (Complaint (Dkt. No. 1, ¶¶ 1, 11).  Kreider, Haahs and Perrotto Builders, Ltd. ("Perrotto") all claim to be covered for certain alleged liabilities arising from incidents that occurred during the Project at a Red Rose Transit Authority ("RRTA") transportation facility, including the April 14, 2010 partial collapse (the "Collapse") of a building owned by the Lancaster Museum of Art.  (Id. at ¶ 1.)  Another, separate incident occurred when laborers working on the Project struck an electric utility line owned and operated by PPL Electric Utilities Corporation ("the Line Strike").  As a result of the Collapse and the Line Strike, approximately fourteen lawsuits have been filed in the Court of Common Pleas of Lancaster County, Pennsylvania (the "Underlying Actions") naming Kreider, Perrotto, Haahs, or RRTA, among others, as defendants, counterclaim defendants, cross-claim defendants, or additional defendants.  (Id. at ¶¶ 1, 27.)

RRTA, as owner, contracted with Perrotto, as general contractor for construction of the Project, and contracted with Haahs as the Project architect/engineer.  (Id. at ¶ 16.)  Perrotto entered into subcontracts with Kreider, Mar-Allen Concrete Products, Inc. ("Mar-Allen"), and Chowns Fabrication & Rigging, Inc. ("Chowns").  (Id. at ¶¶ 18, 23, 107).  Haahs, in turn, contracted with Applied Geoscience & Engineering, Inc. ("Applied Geoscience") for geotechnical engineering and services.

In the subcontract between Perrotto and Kreider, Kreider agreed to indemnify Perrotto, Haahs and RRTA, and maintain certain insurance listing Perrotto, Haahs and RRTA as additional insureds; however, Kreider never requested Firemen's to add Perrotto, Haahs or RRTA on the Policy as "additional insureds," nor was a premium charged to or paid by anyone for Firemen's to assume any risk related to any acts or omissions, professional services, or work performed by Perrotto, Haahs or RRTA.  (Id. at ¶¶ 18-22.)  Following the Collapse, Perrotto and Haahs gave notice to Firemen's that they each claimed coverage under the Policy for all claims

and damages relating to the Collapse, which demands Firemen's rejected.  (Id. at ¶¶ 127-134.)

Firemen's has been defending Kreider in the Underlying Actions in which Kreider is a party.

Firemen's seeks the following declarations as to coverage:  (1) that there is no coverage

for Perrotto, Haahs or RRTA as "Automatic" Additional Insured on the Policy; (2) that there is

no coverage for Haahs as an Architect/Engineer; (3) that there is no coverage for purely

economic damage alleged in the Underlying Actions against Perrotto, Haahs and RRTA; (4) that

there is no coverage for injuries "expected or intended" by Perrotto or Haahs, as alleged in the

Underlying Actions; (5) that there is no coverage for "Professional Services" rendered by

Kreider, Perrotto, Haahs or RRTA; (6) that the contractual liability of Kreider to Haahs is

excluded; and (7) that coverage for Kreider's contractual liability to Perrotto, Haahs and RRTA,

if any, is limited.  (Id. at ¶¶ 144-200.)  On January 26, 2016, Kreider filed a Motion for Leave to

File Additional Brief (ECF 46).  Attached to that Motion is a "New Matter, Counterclaims and

Cross-Claims" filed by Firemen's in the Underlying Litigation on November 5, 2015.  The New

Matter raises in the Underlying Litigation the same claims for declaratory relief against the same

parties as those contained in this federal declaratory judgment action.

## II.   THE **BRILLHART** ABSTENTION DOCTRINE

In their Motions, Kreider and Haahs assert that I should abstain from exercising

jurisdiction in this matter under the doctrine of Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491

(1942).[1]  In Brillhart, the United States Supreme Court determined that "although the District

Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, 28 U.S.C.A. §

400, it was under no compulsion to exercise that jurisdiction."  Id. at 494.  Later, in Wilton v.

Seven Falls Co., 515 U.S. 277 (1995), the Court explained that "the question for a district court

---

[1] Defendants also assert that the Complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(7) for failure to join all necessary parties as required by Rule 19.  Because I conclude that Brillhart abstention is appropriate, I do not reach the alternative argument.

presented with a suit under the Declaratory Judgment Act, the [Brillhart] Court found, is

'whether the questions in controversy between the parties to the federal suit, and which are not

foreclosed under the applicable substantive law, can better be settled in the proceeding pending

in the state court.'" Id. at 282 (quoting Brillhart (internal citation omitted)).  This is the case

because "since its inception, the Declaratory Judgment Act has been understood to confer on

federal courts unique and substantial discretion in deciding whether to declare the rights of

litigants.  On its face, the statute provides that a court '*may* declare the rights and other legal

relations of any interested party seeking such declaration.'"   Id. at 286 (citing 28 U.S.C. §

2201(a) (emphasis added)).  The Court reiterated that "[w]e have repeatedly characterized the

Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather

than an absolute right upon the litigant."  Id. at 287.  "After analyzing the facts of Brillhart and

the development of abstention post-Brillhart,[2] the Wilton Court reaffirmed that '[d]istinct

---

[2] In Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), the United States Supreme Court made clear that:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule.
> The doctrine of abstention, under which a District Court may decline to exercise
> or postpone the exercise of its jurisdiction, is an extraordinary and narrow
> exception to the duty of a District Court to adjudicate a controversy properly
> before it.  Abdication of the obligation to decide cases can be justified under this
> doctrine only in the exceptional circumstances where the order to the parties to
> repair to the state court would clearly serve an important countervailing interest.

Id. at 813 (internal citations omitted).  The Court noted three general categories of cases in which federal courts should abstain from exercising jurisdiction.  First, "abstention is appropriate in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law."  Id. at 814 (internal citations omitted).  "Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar."  Id.  Finally, "abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings."  Id. at 815.  Additionally, the Supreme Court indicated prudential considerations that should guide courts in determining when abstention is proper.  Id.

features of the Declaratory Judgment Act . . . justify a standard vesting district courts with greater discretion in declaratory judgment actions than' in actions potentially amenable to abstention.'" State Nat. Ins. Co., Inc. v. Landis, Civ. A. No. 14-607, 2015 WL 291722, at *4 (E.D. Pa. Jan. 15, 2015) (quoting Wilton, 515 U.S. at 286).  "The propriety of declaratory relief in any given case, the Court went on, is to be 'informed by the teachings and experience concerning the functions and extent of federal judicial power.  In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.'"  Id. (quoting Wilton at 287-88 (internal quotation marks and citation omitted in Landis).  "Against this broad language, and as with Brillhart, the Wilton Court was careful to limit its holding, leaving for another day a delineation of the 'outer boundaries of [Declaratory Judgment Act] discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings.'"  Id. (quoting Wilton at 290).

The Third Circuit has summarized the factors to consider to determine whether Brillhart abstention is appropriate in its decision in State Auto Ins. Companies v. Summy, 234 F.3d 131 (3d Cir. 2000) as follows:

> 1. A general policy of restraint when the same issues are pending in a state court;
> 2. An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion; 3. Avoidance of duplicative litigation. These precedents counsel hesitation by federal courts in exercising jurisdiction over declaratory judgment actions when the state law involved is close or unsettled.  A federal court should also decline to exercise its discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation.  Moreover, district courts should give serious consideration to the fact that they do not establish state law, but are limited to predicting it.

Id. at 134-5.

---

Since Colorado River was decided decades after Brillhart, there was some question as to whether the discretion given to courts in declaratory judgment actions had been eroded by Colorado River.  In Wilton the Court held that Brillhart abstention was still viable.

Finally, in <u>Reifer v. Westport Ins. Corp.</u>, 751 F.3d 129 (3d Cir. 2014), the Third Circuit

provided a uniform and comprehensive approach to resolving questions of jurisdiction in

declaratory judgment actions.  <u>See id.</u> at 137, 146 (stating the court's intent to "clarify this area

of the law" and provide "a uniform approach" for addressing this issue).  The issue in <u>Reifer</u> was

"whether a district court may decline jurisdiction over a declaratory judgment action when there

are no parallel state proceedings."  <u>Id.</u> at 137.  The Court set out a two part analysis for trial

courts to apply, examining "(1) the effect on a district court's DJA discretion in the absence of

pending parallel state proceedings, and (2) assuming the district court maintains discretion in

such circumstances, the scope of that discretion."  <u>See id.</u> at 143.

The first part of the analysis takes the form of a rebuttable presumption scheme, with the

presence or absence of parallel state proceedings being the key question.  The Third Circuit

stated:

> [T]he absence of pending parallel state proceedings militates significantly in favor
> of exercising jurisdiction, although it alone does not require such an exercise.  In
> this circumstance, as part of exercising sound and reasoned discretion, district
> courts declining jurisdiction should be rigorous in ensuring themselves that the
> lack of pending parallel state proceedings is outweighed by opposing factors.
> This same rationale applies when state proceedings do exist.  The existence of
> pending parallel state proceedings militates significantly in favor of declining
> jurisdiction, although it alone does not require doing so. In this circumstance, as
> part of exercising sound and reasoned discretion, district courts exercising
> jurisdiction should be rigorous in ensuring themselves that the existence of
> pending parallel state proceedings is outweighed by opposing factors.

<u>Reifer</u>, 751 F.3d at 144-45; <u>see also</u>, <u>Landis</u>, 2015 WL 291722, at \*5; <u>1100 Adams St. Condo.</u>

<u>Ass'n, Inc. v. Mt. Hawley Ins. Co.</u>, Civ. A. No. 14-2203, 2014 WL 5285466, at \*7 (D.N.J.

Oct.15, 2014) (suggesting that the presence of a parallel state action triggers a "presumption"

against jurisdiction); <u>Owen v. Hartford Ins. Co.</u>, Civ. A. No. 14-924, 2014 WL 2737842, at \*7

(D.N.J. June 17, 2014) (citation omitted) (same).  Accordingly, "the absence of pending parallel

state proceedings creates a rebuttable presumption in favor of jurisdiction unless good reasons

exist for overriding this presumption, [while] the presence of pending parallel state proceedings creates a rebuttable presumption against jurisdiction unless, again, good reasons exist for overriding this presumption." Landis at *5.

The second part of the Reifer analysis, in turn, "is devoted to guiding a court's discretion in determining whether to override the applicable presumption." Id. (citing Reifer at 145-47 (laying out factors to guide a district court's discretion when considering whether the presumption should be given dispositive weight (footnotes and citations omitted))). "This part of the analysis takes the form of a multi-factor balance test, the application of which 'should be articulated in a record sufficient to enable" effective appellate review.'" Id. at *5 (quoting Reifer at 147. The factors to consider are:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;
>
> (3) the public interest in settlement of the uncertainty of obligation;
>
> (4) the availability and relative convenience of other remedies;
>
> (5) a general policy of restraint when the same issues are pending in a state court;
>
> (6) avoidance of duplicative litigation;
>
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and
>
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

Id. at *5-6; Reifer at 146. The Court may also "be required to consult additional guideposts, such as whether federal interests would be served by hearing the matter in federal court and whether a state forum is better suited to deal with any state-law issues." Id. at *6 (footnotes omitted).

a.       Reifer Part I — Parallel State Proceedings

The first part of the Reifer analysis is a determination of whether an underlying state court action constitutes a '"parallel state proceeding" capable of triggering a rebuttable presumption against jurisdiction." Landis at *6 (citing Reifer at 144 (agreeing with other circuit courts that "the existence or non-existence of pending parallel state proceedings" deserves "increased emphasis" (citations omitted))). To qualify, the proceeding pending in a state court must be one "in which all the matters in controversy between the parties *could* be fully adjudicated." Brillhart, 316 U.S. at 495 (emphasis added); see also Wilton 515 U.S. at 290 (characterizing the pending state court action as "parallel proceedings, presenting *opportunity* for ventilation of the same state law issues." (emphasis added)). I must consider whether "some aspect of state procedural or substantive law foreclosed the ability to vet those issues in the state proceeding." Landis at *6 (citing Brillhart at 495-96 (observing that the district court "did not consider whether, under applicable local law, the claims sought to be adjudicated by the respondent in this suit for a declaratory judgment had either been foreclosed by Missouri law or could adequately be tested in the garnishment proceeding pending in the Missouri state court")). Taken together, Brillhart and Wilton, with their focus on potential, as opposed to actual presentation of parallel issues, have been held to grant the term "parallel state proceedings" a "broad sweep," presumably to ensure that federalism concerns are not trumped by a race to the courthouse. See Atl. Mut. Ins. Co. v. Gula, 84 F. App'x 173 (3d Cir. 2003); Landis at *6.

Like here, in Gula, the Third Circuit reviewed a district court's decision whether to decline jurisdiction over an action seeking declaratory judgment of non-coverage filed by an insurance company with respect to claims presented in underlying state tort actions. See id. at 174. The insurance company argued that the district court had erred in abstaining, in part because the related state court action did not "expressly deal with the issue of coverage" that was

raised in the federal action.  Id. at 175.  The Third Circuit rejected the argument, stating that "even if the coverage issue is not currently pending, it will as a matter of logic necessarily arise before the matter is concluded in state court."  Id.  It held that the first Summy factor had been met, namely "[a] general policy of restraint when *the same issues are pending in state court*."  Id. at 174-75 (emphasis added) (citation omitted); Landis at *6.

Accordingly, under Brillhart, Wilton and the Third Circuit's interpretation, a "parallel state proceeding" for purposes of DJA discretion is a "currently-engaged state court action that is competent as a matter of state procedural and substantive law to allow full adjudication of all matters raised in the federal action.  In making the determination, courts 'may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.'"  Landis, at *7 (quoting Brillhart, 316 U.S. at 495).  To do so, I consult the applicable state law.  See id. at 495-97 (asserting that the district court should have consulted Missouri law to answer the above questions).

Defendants argue that the Underlying Litigation is parallel to this Declaratory Judgment Action because it actually includes a  declaratory judgment action — filed by Kreider — that seeks adjudication of the rights and obligations under  the Policy in relation to the alleged liability arising from the Project, as well as the suits to determine that liability.  They assert that:

> this analysis is rather straightforward.  [Kreider] filed a declaratory action in the Lancaster County Court of Common Pleas on December 19, 2014.  [Its] declaratory action, in  itself, suffices as a parallel action because Counts I through IV of the lawsuit request declaratory  relief to determine the Policy coverage pertaining to the alleged liability arising from the Project. . . .   All the parties to this Declaratory Action are also parties in  the underlying declaratory action. Thus, Fireman's [sic] may cross-claim and counterclaim every  count that it has presented in this Declaratory Action.

> Any differences between [the] parallel state action and this federal action arise from the  fact that [Kreider]'s action is more comprehensive:  It includes more parties, and it will be  coordinated with the Underlying Litigation to provide a

more comprehensive and efficient  litigation of the general conflict.   These differences additionally favor this Court's abstention.

(ECF 22 at 10 (internal citation omitted)).

In response, Firemen's argues that:

Here, the factual questions presented in the federal and state court actions fail to sufficiently overlap.  The state court action seeks only declarations as to Firemen's obligations to Kreider based upon the facts alleged against Kreider in the Underlying Actions.  It does not seek to adjudicate any issues between Firemen's and Perrotto, Haahs or RRTA, which involve the application of the Policy language to the facts alleged against each of them in the Underlying Actions.  The roles of Kreider, Perrotto, Haahs and RRTA in the Project and, allegedly, in the Collapse were very different.  RRTA was the owner; Haahs was the architect/engineer; Perrotto was the general contractor; and Kreider was one of several subcontractors of Perrotto.  The allegations against them in the Underlying Actions differ (in fact, RRTA is primarily a plaintiff in the Underlying Actions) and the applicable Policy provisions as to each are not the same (for example, exclusions applying to architects/engineers apply only to Haahs).  The relief sought by Kreider's state declaratory judgment action is not "substantially identical" to the comprehensive relief sought by Firemen's in this federal action, certainly as to Perrotto, Haahs and RRTA.  Firemen's claims will not be fully adjudicated in the state court action because coverage, or the lack thereof, for Perrotto, Haahs and RRTA are not addressed in Kreider's state court action.

(ECF 40 at 11-12.)

I find that Firemen's argument is not well made.  The issue of whether a parallel action exists is not whether there is actual and complete overlap, but rather whether the state court action is one "in which all the matters in controversy between the parties *could* be fully adjudicated."  Brillhart, 316 U.S. at 495 (emphasis added).  There is no dispute that all of the parties to whom Kreider could be liable, and to whom Firemen's would have to indemnify Kreider, are joined in the state court action.  I find that Kreider is correct when it argues that the only difference between the Underlying Action and this federal action is that Kreider's action is more comprehensive.

Indeed, on November 5, 2015, after the initial rounds of briefing in the federal case were complete, Firemen's actually did file a cross-claim against Perrotto, Haahs and RRTA in

Kreider's Lancaster County declaratory judgment action, seeking a declaration of no coverage under the Policy. (See ECF 46, Ex. A.) These claims are coextensive with the claims it raises in the federal action. Kreider argues that, now that Firemen's has filed identical claims in state court, it is obvious that Firemen's has the full opportunity to litigate all coverage issues in Lancaster County, and the Underlying Litigation is "parallel" for Brillhart purposes.

I conclude that Kreider is correct. As all parties were joined in the Underlying Litigation, Firemen's could have filed in state court every coverage cross-claim and counterclaim count that it chose to file here. Because there was the opportunity to present all claims in state court, and Firemen's has now taken up that opportunity, it is unquestionable that the Underlying Action qualifies as a parallel proceeding, and a rebuttable presumption arises in favor of declining jurisdiction. The next question is whether I should override that presumption, applying the factors listed in Reifer. See Landis at *5; Reifer at 145-47.

     b.      Reifer Part II — Overriding the Presumption

          1. The likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy.

Kreider argues that it and Firemen's will not be afforded complete relief on the insurance coverage issues in federal court and that it will be forced to relitigate the same issues in the Underlying Action because, under Pennsylvania law, any party who has a potential claim to the proceeds or claim of coverage under an insurance policy is entitled to be a party to litigation determining the rights and obligations of the policy. (ECF 22 at 21 (citing Vale Chem. Co. v. Hartford Accident and Indem. Co., 516 A.2d 684 (Pa. 1986)). This argument has no merit.

The Third Circuit has rejected the argument that the Pennsylvania state law requirement that injured third parties in underlying tort actions requires that those parties must be joined in a federal declaratory judgment actions on insurance contracts, holding that the requirement is one

11

of state procedural law, not substantive law. See Liberty Mut. Ins. Co. v. Treesdale, 419 F.3d

216, 229 (2005) ("Vale did not announce substantive principles of law for Pennsylvania courts to

apply in insurance coverage disputes.  Rather, Vale addressed procedural and jurisdictional

issues."); see also Nat'l Cas. Co. v. Young, Civ. A. No. 07-4836, 2008 WL 4414719, at *1 n.3

(E.D. Pa. Sept. 23, 2008) ("This Court will follow the Treesdale Court's interpretation of Vale,

and conclude that it does not announce substantive principles of law.").  As such, a federal court

does not need to apply it.  Id. (citing Erie R.R. v. Tompkins, 304 U.S. 64, 58 (1938)).

> 2.  The convenience of the parties.

There is no assertion that any party would be seriously inconvenienced by continuing the

federal DJA proceeding.  All parties are present in the Eastern District of Pennsylvania.

However, Kreider has the best argument that conducting all aspects of the litigation in Lancaster

County would be more convenient — in terms of scheduling and coordination of all proceedings

— since all parties are already litigating there.

> 3.  The public interest in settlement of the uncertainty of
> obligation.

Neither party makes any specific argument on this issue.

> 4.  The availability and relative convenience of other remedies.

Kreider has the best argument that conducting the insurance coverage litigation in tandem

with the Underlying Litigation will provide the most convenient remedy.  I cannot, other than in

the abstract, resolve issues of third-party liability that may arise in determining coverage, while

the state courts can.

> 5.  General policy of restraint when the same issues are pending in
> a state court.

This factor clearly favors Defendants.  The same coverage issues now have actually been

joined in state court.  The possibility of inconsistent results now clearly exists.

> 6.  Avoidance of duplicative litigation.

This factor clearly favors Defendants for the same reasons just stated.

> 7.  Prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata.

Firemen's notes that it was not a party to the Underlying Litigation until Kreider filed its state court declaratory judgment action after Firemen's own DJA action was filed. Kreider, it argues, now seeks to dismiss the DJA action in favor of its own action, which is the archetype effort to "provide another forum in a race for res judicata." (Pl. Mem. at 14-15.) Kreider raises the same allegation based on Firemen's filing its declaratory judgment action in federal court instead as part of the ongoing state court litigation, in which all parties were already joined and litigating their dispute. (ECF 43 at 13 ("If procedural fencing is present in the case at hand, it is, in fact, Fireman's who has engaged in procedural fencing. All of the litigation arising from the construction project is being litigated in Lancaster County. This Declaratory Action includes matters of fact and law that are already raised in Lancaster County. The most logical forum for Fireman's to have filed this Declaratory Action would have been in Lancaster County, so as to allow the crucial issues of fact and law to be litigated first in the underlying action, and then such findings of fact and law could be binding on the insurance coverage issues.").)

I find that Kreider has the better argument. While I cannot adjudicate the entirety of the controversy, the state court can. Firemen's offers to cogent argument why it did not start its suit in state court where all the other disputes over liability and entitlement to the proceeds of the policy were already being litigated.

> 8.  Conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

Defendant Haahs argues that because Kreider is being defended in state court by counsel appointed by Firemen's, and it will be necessary in the federal action to engage in discovery into the same facts that will be being discovered in state court — including what requirements, if any, Kreider had with respect to naming other parties as additional insureds on its policy — there is an inherent conflict of interest resulting from Firemen's defending Kreider in one action and pursuing a declaration of no duty to defend in another action.  It also argues a conflict arises from the fact that it tendered its own defense to Firemen's as an additional insured and the tender was denied.  Firemen's responds that any conflict of interest has been avoided by having different counsel represent Kreider in the Underlying Action.  Because it is undisputed that Firemen's is providing a defense to Kreider in the Underlying Litigation, I find that this issue does not favor either side.

The "additional guideposts" suggested by Reifer —whether federal interests would be served by hearing the matter in federal court and whether a state forum is better suited to deal with any state-law issues — also favor abstention.  There is no suggestion that a specific federal interest was at issue in the filing of the DJA action and the Underlying Litigation seems to be clearly better suited to deal with third-party liability questions since those third-parties are not represented here.

III.   **CONCLUSION**

Balancing all of the factors listed, I conclude that Firemen's has shown no basis to rebut the presumption that Brillhart abstention is appropriate.  As the Third Circuit made clear in Summy, federal courts should abstain from exercising discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation.  Id., 234 F.3d at 134-5.  Since the identical coverage issues are now joined in the Underlying Litigation, they should not proceed here.  Accordingly, I grant Defendants' Motion to Dismiss on Brillhart

abstention grounds.  Because this decision fully decides whether the case remains in federal court, I do not reach the argument that the case must be dismissed for failure to join indispensable parties under Rules 12(b)(7) and 19(a)(1).

An appropriate Order follows.